UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**MARKETFARE CANAL, LLC, ET AL**                         **CIVIL ACTION**

**VERSUS**                                               **NO. 07-3557**

**UNITED FIRE & CASUALTY COMPANY**                       **SECTION B(3)**

### ORDER AND REASONS

Before the Court are Plaintiffs' and Defendant's respective Motions for Summary Judgment (Rec. Docs. 18, 36). Defendant's motion for Summary Judgment (Rec. Doc. 36) incorporates the arguments Defendant presented in its Opposition to Plaintiffs' Motion for Summary Judgment (Rec. Doc. 22); similarly, Plaintiffs' Opposition to Defendant's Motion (Rec. Doc. 39) essentially restates the arguments in Plaintiffs' reply memo to Defendant's Opposition to Plaintiffs' Motion (Rec. Doc. 41). After review of the pleadings and applicable law, and for the reasons that follow,

**IT IS ORDERED** that Defendant United Fire's Motion for Summary Judgment (Rec. Doc. 36) is **DENIED** and Plaintiffs' Motion for Summary Judgment (Rec. Doc. 18) is **GRANTED in part and DENIED in part**. The portion of Plaintiffs' Motion for Summary Judgment on the issue of waiver is **GRANTED**. The remainder of Plaintiffs' Motion for Summary Judgment is **DENIED** as genuine issues of material fact remain regarding the amount of recovery and the assessment of penalties.

## BACKGROUND

The issue in this case is whether losses caused by theft are covered under Plaintiffs' commercial property insurance policy issued by Defendant United Fire. Plaintiffs owned and operated Robert Fresh Market located at 4001 Canal Street, which was completely shut down after Hurricane Katrina due to extensive damage caused by the hurricane. In effect at the time of the hurricane were Plaintiffs' commercial property insurance policy issued by Defendant United Fire and a flood policy issued through a separate company. The flood carrier paid Plaintiffs $1.956 million dollars. The property was gutted in October 2005, following an initial inspection by Defendant's adjuster, and was subsequently inspected at least four additional times by Defendant's adjuster or claims representative. One of United Fire's inspectors, Tommy Lundberg, commented in a June 29, 2006 report that the store was completely gutted of "interior finishes, electrical fixtures, mechanical systems and all equipment and shelving."

Plaintiffs and Defendant disputed the amount of covered damages to the property. Plaintiffs alleged that Defendant's failure to adequately compensate Plaintiffs for losses resulted in Plaintiffs' inability to repair the property. Subsequently, Plaintiffs filed multiple suits in state court regarding damages to the Canal property and other store locations. Five of the suits

2

were removed to federal court and were consolidated for trial. (See Civ. Action No. 06-7232, *Marketfare Annunciation, LLC v. United Fire and Casualty Co.*). The jury found that Defendant United Fire arbitrarily, capriciously, and without probable cause failed to adequately compensate Plaintiffs for Katrina related losses at all five stores, including the Canal location. The jury award to Plaintiffs relating to the Canal St. store included $6,252,429.00 for covered losses and $2,016,000.00 in bad faith penalties. United Fire has appealed that case.

In accordance with Emergency Rule 23 issued by the Louisiana Commissioner of Insurance, Plaintiffs' commercial insurance policy with Defendant was renewed for the policy period commencing July 1, 2006 and ending on July 1, 2007. The renewed policy contained the same coverage as the previous policy, including an exclusion for vandalism or theft if the property has been vacant for more than 60 consecutive days. Both Plaintiffs and Defendant were aware that the Canal St. store had been vacant for more than 60 days at the time of renewal. Plaintiffs paid Defendant United Fire a $16,776.00 premium to maintain insurance coverage on the Canal St. store.

On October 31, 2006, the New Orleans Police Department apprehended persons that had broken into the Canal St. store and were in the process of stealing the building's copper wiring. On or about November 6, 2006, Plaintiffs made a claim under their

3

commercial property policy with United Fire for the theft and damage to the copper wiring.  United Fire denied the claim on January 15, 2007, relying on the policy's provision excluding vandalism/theft coverage where the loss occurs in a building that has been vacant for more than 60 consecutive days.  Plaintiffs initiated the present action on July 2, 2007.  During the 2008 trial on the Hurricane Katrina damages claims against United Fire, Marc Robert, the principle owner of Plaintiffs' stores, testified that he had not renewed his option to lease the Canal St. building and would not be re-opening the Canal St. store.  Plaintiffs assert that they were unable to re-open the store due to the financial strain that arose because of United Fire's alleged failure to pay adequate insurance proceeds.  Plaintiff further supports this assertion by stating that their original intent was to re-open the Canal St. store, as evidenced by the $880,000.00 Mr. Robert paid to rent the location from the time Katrina made landfall through April 2008.

Plaintiffs argue first that Defendant waived the right to rely on the 60 day vacancy exclusion and is estopped from denying coverage on that basis because it accepted Plaintiffs' premium payment with full knowledge that the property was vacant and before the theft occurred.  In support of this argument, Plaintiffs rely upon various cases that held that the insurer waived such exclusion clauses when the insurer knew or should have known of the existence

4

of the clause trigger and still accepted payment of the premium and issued the policy ("the waiver cases")[1]. Plaintiffs further argue that Emergency Rule 23 must be construed for the maximum protection and benefit of the insured.

Plaintiffs' second argument is that Defendant was responsible for triggering the vacancy because of its refusal to fully pay insurance proceeds to repair the property. Plaintiffs argue that despite Defendant's appeal to the Fifth Circuit in Case No. 06-7232, res judicata applies[2] and this Court should rely upon the jury finding in that case that United Fire failed to adequately compensate Plaintiffs and was in bad faith. Plaintiffs suggest that had United Fire originally paid the full amounts allegedly due, repairs would have commenced and the Canal St. store would not have been vacant at the time of the theft. Plaintiffs argue that allowing Defendant to deny coverage on the basis of the vacancy clause in this instance would essentially reward Defendant United

---

[1] Plaintiff presents two persuasive cases: *Travelers Fire Ins. Co. v. Bank of New Albany*, 146 So.2d 351 (Miss. 1962)(awarding plaintiff amount paid for premium after finding that insurer waived vacancy clause in insurance policy covering property, that was later destroyed by fire, because insurer knew the property was vacant at the time of policy renewal and agent led owner to believe the property was covered), and *American Fire & Casualty Co. v. Eastham*, 185 F.2d 729 (5th Cir. 1950)(applying Texas law and finding that insurer waived right to rely on vacancy clause because it had knowledge of the vacancy and did not cancel the policy but kept the unearned premium). Louisiana waiver cases include: *The Home Insurance Co. v. Matthews,* 998 F.2d 305, 309 (5th Cir. 1993); *Tate v. Charles Aguillard Ins. & Real Estate, Inc.*, 508 So.2d 1371, 1373 (La. 1987); and *Swain v. Life Insurance Co. of Louisiana*, 537 So.2d 1297, 1300 (1989).

[2] Plaintiffs cite *A.F. Pylant, Inc. v. Republic Creosoting Co.,* 285 F.2d 840 (5th Cir. 1961), for the legal proposition that "a federal court judgment has res judicata effect notwithstanding a pending appeal of that judgment."

5

Fire for its arbitrary and capricious refusal to pay and "would be tantamount to sanctioning United Fire's willful violation of LSA-R.S. 22:658 and LSA-R.S. 22:1220, as well as the public policy of the State of Louisiana." (Rec. Doc. 18-2 at 2). Plaintiffs cites *Magnon v. Collins*, 98-2822 (La. 7/7/99), 739 So.2d 191, 196-97, for the principle that "insurance companies may only limit coverage by way of a policy exclusion if the exclusion does not conflict with statutory provisions or the public policy of this state." (Rec. Doc. 18-2 at 12).

Finally, Plaintiffs argue that they were not compensated for the theft and vandalism of the copper wire in Case No. 06-7232 and further assert that the report of the flood insurance adjuster upon which Defendant relies in its argument that Plaintiffs have already been compensated for the copper wiring, constitutes inadmissable hearsay evidence that is not properly considered in a motion for summary judgment.

Defendant first argues the clear and unambiguous text of the policy, which does not make an exception depending on the reason for the vacancy of the building. Defendant points out that Plaintiffs were aware the property was vacant when they renewed the policy and paid the premium.

Defendant's primary argument is that it did not waive the exclusion clause because, unlike the insurers in the insurance waiver cases, who could discontinue or refuse to provide coverage,

6

Defendant was forced to offer the same coverage in the renewal policy in order to comply with Rule 23. Defendant asserts that the crux of the insurance waiver cases is that "it would be unjust to allow the insurance company to accept premiums in exchange for coverage that it knew did not exist and it would later deny" and that "the waiver doctrine essentially penalizes the insurer for not refusing to provide or discontinue coverage in the first place." (Rec. Doc. 22 at 7). Defendant asserts that this power to avoid or forfeit coverage is the threshold requirement for waiver under Louisiana law. Defendant relies upon *Gaunt v. La. Citizens Property Insurance Corporation*, 512 F.Supp. 2d 493 (E.D. La. 2007), and argues that Plaintiffs could have negotiated different terms and "presumably different premiums." (Rec. Doc. 22 at 8).

Defendant also disputes the res judicata argument and argues that the previous jury findings against United Fire should not be allowed. Defendant cites res judicata criteria from *United States v. Shanbaum*, 10 F.3d 305, 310 (5th Cir. 1994): 1) identity of parties or their privies in the two actions; 2) the judgment in the prior action must have been rendered by a court of competent jurisdiction; 3) the prior action must have concluded with a final judgment on the merits; and 4) the same claim or cause of action must be involved in both suits. Defendant argues that the same claim or cause of action is not involved in the present case as in the previous jury trial. Defendant notes that the claims arose

under different policies and involved different policy provisions and exclusions and that the cases will involve different evidence. Defendant also points out that Plaintiffs' attempt to consolidate the cases was denied.

Alternatively, Defendant argues that even if res judicata applies, Plaintiffs should still be denied recovery because, between the two suits, they would receive more than the value of the insured property and that the Katrina judgment would involve Plaintiffs' receipt of funds "far in excess of what it would cost to replace the building and the betterments and improvements, which include the copper tubing at issue in this case."[3] (Rec. Doc. 22 at 11). Defendant further asserts that the flood insurance adjuster made allowance for the walk-in coolers and the electrical equipment in the building.

## DISCUSSION

**A.    Summary judgment Standard**

Summary judgment is proper if the pleadings, depositions, interrogatory answers, and admissions, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*,

---

[3]Plaintiffs dispute the claim that they were awarded proceeds for the copper wiring in Case No. 06-7232 and present the affidavit of Jim Kotter, an expert hired by Marketfare Canal, LLC in Case No. 06-7232, which states that the damages claimed at that trial did not include the copper wiring and refrigeration lines. (Rec. Doc. 34).

477 U.S. 317, 327 (1986). A genuine issue exists if the evidence would allow a reasonable jury to return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, (1986). Although the Court must consider the evidence with all reasonable inferences in the light most favorable to the nonmoving party, the nonmovant must produce specific facts to demonstrate that a genuine issue exists for trial. *Webb v. Cardiothoracic Surgery Assocs. of N. Texas,* 139 F.3d 532, 536 (5th Cir. 1998). The nonmovant must go beyond the pleadings and use affidavits, depositions, interrogatory responses, admissions, or other evidence to establish a genuine issue. *Id.* Accordingly, conclusory rebuttals of the pleadings are insufficient to avoid summary judgment. *Travelers Ins. Co. v. Liljeberg Enter., Inc.*, 7 F.3d 1203, 1207 (5th Cir. 1993).

**B. Waiver and Emergency Rule 23**

    **1. Law - Waiver**

The Louisiana Supreme Court enumerated the elements of waiver as follows: (1) an existing legal right; (2) knowledge of the existence of that right; and (3) either (a) an actual intention to relinquish the right, or (b) conduct so inconsistent with the intent to enforce the right so as to induce a reasonable belief that the right has been relinquished. *Arceneaux v. Amstar Corp.*, 969 So.2d 755, 767 (La. App. 4 Cir. 2007)(citing *Steptore v. Masco Constr. Co.*, 643 So.2d 1213, 1216 (La. 1994). *See also Arceneaux*

9

*v. Amstar Corp.*, 921 So.2d 189, 192 (La. App. 4 Cir. 2005). The Louisiana Supreme Court has also defined waiver as 'the intentional relinquishment of a known power or privilege.'" *The Home Insurance Co. v. Matthews*, 998 F.2d 305, 309 (5th Cir. 1993)(*quoting Tate v. Charles Aguillard Ins. & Real Estate, Inc*., 508 So.2d 1371, 1373 (La. 1987)).

In the present case, Defendant insurer had a right to enforce the vacancy clause and knew of that right as drafter of the policy; thus elements one and two are satisfied. Hence, the appropriate focus for analysis of waiver in the instant case is element three: whether (a) Defendant had an actual intention to relinquish the right, or (b) Defendant's conduct was so inconsistent with the intent to enforce the right so as to induce a reasonable belief that the right has been relinquished.

Courts applying Louisiana law have typically found an insurer to have waived non-coverage defenses when the insurer issued the policy or continued coverage "with knowledge of facts indicating non-coverage under the insurance policy." *Arceneaux*, 921 So. 2d at 192; *see also Steptore*, 643 So.2d at 1216. In particular, as indicated by the insurance waiver cases presented by Plaintiffs, "under Louisiana law, the acceptance of premium payments by an insurer after receiving knowledge of facts creating a power of avoidance or privilege of forfeiture constitutes a waiver of such power or privilege." *Matthews*, 998 F. 2d at 309-10 (internal

quotes omitted); *see also Swain v. Life Insurance Co. of Louisiana*, 537 So. 2d 1297, 1300 (1989). Acceptance of premium payments with knowledge of facts creating power of avoidance or forfeiture constitutes conduct "so inconsistent with the intent to enforce the right so as to induce a reasonable belief that the right has been relinquished" or is evidence of defendant insurer's "intention to relinquish the right" and thus satisfies the third element of waiver. *See Matthews,* 998 F.2d at 310(finding that the insurer's acceptance of payment of the premium "could not be considered otherwise than as an election on [the insurer's] part to continue the policy in force").

Common characteristics of the insurance waiver cases cited include a factual scenario in which enforcement of the clauses at issue would essentially result in a completely ineffective policy and the insurers' minimally restricted right to terminate the policy. Allowing an insurer to retain the "unearned premium" while denying coverage in such factual circumstances is inherently unfair. *American Fire & Casualty Co. v. Eastham*, 185 F.2d 729, 730 (5th Cir. 1950)(applying Texas law and finding that "where the insurer acquires full knowledge of facts sufficient to work a forfeiture of its policy, and does not cancel the policy but retains the <u>unearned</u> premium, it waives the condition and is estopped to claim a forfeiture")(emphasis added). The vacancy clause in the present case, however, only eliminates coverage for

11

"vandalism, sprinkler leakage, ... building glass breakage, water damage, theft, or attempted theft."[4] (Rec. Doc. 18-3 at 13, United Fire Commercial Policy, Building and Personal Property Coverage Form, Section E(6)). Additionally, the present case involves stringent restrictions on the insurer's right to terminate under Emergency Rule 23-Suspension of Right to Cancel or Nonrenew Residential, Commercial Residential or Commercial Property Insurance Due to Hurricane Katrina or Hurricane Rita.

The factual distinctions between the present case and the insurance waiver line of cases regarding the extent of the non-coverage is insufficient to overcome waiver. Under Louisiana law, "[a]ny policy provision can be waived," and the Louisiana Supreme Court has "concluded that 'the best view is that waiver may apply to any provision of an insurance contract under which the insurer knowingly and voluntarily elects to relinquish his right, power or privilege to avoid liability, even though the effect may bring within coverage risks originally excluded or not covered.'" *Arceneaux*, 969 So. 2d at 765 (*citing Steptore* and *quoting Tate*, 508 So. 2d at 1375). "'[R]eliable proof of such knowing and voluntary waiver is necessary and the burden of producing it, as in the proof of obligations, generally falls on the party who demands performance."' *Id.* (*quoting Tate*, 508 So. 2d at 1375).

---

[4] Under E(6)(b) of the policy, all other causes of loss are subject to a 15% reduction of claim payment under the vacancy clause.

**2. Law - Emergency Rule 23**

As recognized by Defendant United Fire, Emergency Rule 23 suspends the right of insurers to not renew or cancel insurance policies and requires that the renewal policy "maintain a policy holder at the previous premium/rate and with the same terms and conditions as previously written, subject only to a change to the premium/rate structure that is based on objective criteria." Advisory Letter 06-03, Louisiana Insurance Commissioner, issued May 31, 2006);[5] *see also Historic Restoration, Inc. v. RSUI Indemnity Co.*, 955 So. 2d 200, 205 (La. App. 4 Cir. 2007); *Dillard University v. Lexington Insurance Company,* 466 F. Supp. 2d 723 (E.D. La. 2006)(ordering insurers to reform the renewal policies to contain the same terms and conditions as the expired policies); and *Gaunt v. Louisiana Citizens Property Insurance Corporation,* 512 F.Supp. 493, 501 (E.D. La. 2007). "The purpose of Emergency Rule 23 is to 'afford maximum consumer protection for the insureds of Louisiana.'" *Gaunt*, 512 F. Supp. at 501 (quoting Emergency Rule 23 § 4321A).

In addition to protecting the insured's access to renewed policies, "Emergency Rule 23 also maintains the insured's right to

---

[5]"Admitted insurers and surplus lines insurers are hereby advised that they are expected to renew any applicable Louisiana policyholder at the previous premium/rate and with the same terms and conditions as previously written, subject only to a change to the premium/rate structure that is based on objective criteria." Advisory Letter Number 06-03, May 31, 2006, James J. Donelan, Commissioner of Insurance.

modify his or her insurance policies." *Id*. Specifically, Rule 23 does not require an insured to purchase a renewed policy or "prevent or prohibit an insured from <u>voluntarily</u> entering into an agreement with an insurer to modify the coverage, limits, terms, endorsements, exclusions or deductibles." Rule 23, § 4311 (emphasis added). Section 4311, however, does not go so far as to suggest that negotiations regarding policy modifications can only be <u>initiated</u> by the insured. As evidenced by the wording of § 4311, the key criterion in such policy modifications and negotiations is the voluntariness of the insured's participation. The request of the insured is evidence that can be used to evaluate the insured's voluntary participation in negotiations. *See Dillard*, 466 F. Supp. 2d at 728 (rejecting defendants' claim that Dillard requested new terms and conditions and defendants' argument that the policies at issue were new policies which were renegotiated by the parties and finding that there was no evidence that Dillard voluntarily negotiated a reduction in coverage); *Belmont Commons LLC v. Axis Surplus Insurance Co.*, 2008 WL 2945928, at *3 (E.D. La. 2008)(denying defendant's motion for summary judgment upon finding that plaintiff had presented evidence contradicting defendant's argument that plaintiff requested a new policy).

Additionally, in contrast to Defendant United Fire's argument that it "had no choice but to issue the policy as it had been

written in 2005," Rule 23 contains multiple provisions regarding an insurer's rights and obligations regarding policy changes. (Rec. Doc. 22 at 8). Section 4317 outlines the procedures for an insurer's submission "to the commissioner, for his approval, [of] a Modified Renewal Plan that would allow for significant or substantive modifications to an underlying policy of insurance ... subject to Emergency Rule 23." Section 4319 discusses insurer application for exemption from compliance, and, as articulated by the Insurance Commissioner in Advisory Letter No. 06-03, Rule 23 allows insurers to change the premium/rate structure "based on objective criteria." As evidenced by case law on the subject and the issuance of Advisory Letter No. 06-03, the "objective criteria" provision was intended to ensure compliance with the purpose and intent of Rule 23 "to afford maximum consumer protection" by restricting unjustified premium/rate increases. Emergency Rule 23 § 4321. However, nothing in the express language of Rule 23 or the Insurance Commissioner's Advisory Letters, prohibits insurance companies from decreasing the premium, "based on objective criteria."

A decrease in premium was discussed in *Gaunt v. Louisiana Citizens Property Insurance Corporation*, 512 F. Supp. 2d 493, 496 (E.D. La. 2007), which involved "valued policies" for which the premiums "are calculated, in part, in relation to the value of the insured property." In *Gaunt*, the defendants argued that insurers

15

should have lowered their insurance premiums because "their property values declined as a result of damage caused by Hurricanes Katrina and/or Rita" and because "the insurers knew of the depressed values of their properties." *Id*. Just as Defendant United Fire argues in the present case, the *Gaunt* defendants argued that Rule 23 prohibited them from unilaterally reducing coverage limits and premiums and pointed out that "the plaintiffs retained the right to voluntarily change coverage limits and, consequently, premiums." *Id*. at 501. The Court, however, rejected the argument that insurers were completely impotent to take any action resulting in a lower premium and held that "Emergency Rule 23 required the defendants to maintain the plaintiffs' insurance policies at the same premiums and coverages unless the plaintiffs voluntarily requested changes <u>or any changes were based upon objective criteria</u>." *Id*. at 502 (emphasis added).

3. **Application - Waiver and Emergency Rule 23**

Determination of whether Defendant United Fire waived its right to deny coverage based upon the vacancy clause relies upon satisfaction of the third element of waiver through (a) Defendant's an actual intention to relinquish the right, or (b) conduct of Defendant that was so inconsistent with the intent to enforce the right so as to induce a reasonable belief that the right has been relinquished. Application of the longstanding Louisiana legal principle that "the acceptance of premium payments by an insurer

16

after receiving knowledge of facts creating a power of avoidance or privilege of forfeiture constitutes a waiver of such power or privilege" creates a strong inference in favor of a finding of waiver. It is undisputed that United Fire accepted Plaintiffs' premium payment of $16,776.00 to maintain insurance coverage on the Canal St. store. Furthermore, both parties acknowledge that, just as in most of the insurance waiver cases, both parties were aware that the property had been vacant for over 60 days and were at least on notice of the possibility that the property might be vacant for yet another 60 days or more as the parties disputed claim proceeds and repairs had not yet commenced on the gutted property at the time of renewal.

United Fire's only substantial defense to this inference of waiver is that, under Rule 23, it "had no choice but to issue the policy as it had been written in 2005." (Rec. Doc. 22 at 8). United Fire also attempts to throw the responsibility for its receipt of an "unearned premium" on the Plaintiffs, asserting that Plaintiffs "could have negotiated different terms and presumably different premiums." *Id*. This argument falls short because, although Defendant did not have the easy option to cancel or choose not to renew the policy, Rule 23 provided multiple options Defendant could have taken to avoid issuing a policy with moot provisions. Defendant could have initiated negotiations with Plaintiff in addition to offering the renewed policy with unchanged

17

terms, evaluated whether the ineffective vacancy clause constituted an objective criteria[6] upon which to adjust the premium to eliminate that "unearned" portion of the premium, submitted a Modification Renewal Plan to the Insurance Commissioner, or evaluated the possibility of applying for exemption.

Like the defendant insurers in the insurance waiver cases, United Fire had options which it could have taken to avoid knowingly issuing a policy with moot provisions. And like the insurance waiver cases' defendants, United Fire received a premium, at least a portion of which was "unearned." Therefore, in accordance with Louisiana law, Defendant United Fire's acceptance of the premium payment with knowledge of facts creating power of avoidance or forfeiture "could not be considered otherwise than as an election on [the insurer's] part to continue the policy in force." *Matthews*, 998 F.2d at 310. Any other application/interpretation would allow United Fire to collect premiums and refuse coverage.[7] Accordingly,

**IT IS ORDERED** that Defendant United Fire's Motion for Summary

---

[6] It is unnecessary for the Court to determine whether the vacancy constituted objective criteria for the purposes of premium/rate adjustment. Unlike in *Gaunt*, in which the premium reduction was one of the issues to be determined, evaluation of the objective criteria in the present case is only to establish the possible options of Defendant as evidence for waiver. *Gaunt*, 512 F.Supp.2d at 502.

[7] The Court finds it unnecessary to evaluate Plaintiff's supporting argument that United Fire cannot rely on an exclusion it was allegedly responsible for triggering because the Court finds that Defendant United Fire has waived non-coverage based on the vacancy clause and subsequently declines to evaluate the supporting res judicata argument at this time.

Judgment (Rec. Doc. 36) is **DENIED** and Plaintiffs' Motion for Summary Judgment (Rec. Doc. 18) is **GRANTED in part and DENIED in part**. The portion of Plaintiffs' Motion for Summary Judgment on the issue of waiver is **GRANTED**. The remainder of Plaintiffs' Motion for Summary Judgment is **DENIED** as genuine issues of material fact remain regarding the amount of recovery and the assessment of penalties.

New Orleans, Louisiana, this 13th day of January, 2009.

**UNITED STATES DISTRICT JUDGE**